CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
Aug. 4, 2016
JULIA C. DUDLEY, CLERK
BY: A. Melvin
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANN M. RUCKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:15-cv-148 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Ann M. Rucker ("Rucker") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Rucker alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) weigh the0 medical opinion evidence in determining her residual functional capacity ("RFC"); (2) assess her credibility; and (3) formulate a hypothetical question to the vocational expert at step 5. I conclude that the ALJ failed to adequately explain his determination of Rucker's RFC, so as to allow for meaningful review. Accordingly, I **RECOMMEND GRANTING in part** Rucker's Motion for Summary Judgment (Dkt. No. 14) and **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Rucker failed to demonstrate that she was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, __F.3d.__, No. 15-1098, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the Court of Appeals remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 2016 WL 3349355, at *10. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Rucker's RFC.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

# **CLAIM HISTORY**

Rucker filed for DIB on October 14, 2011, claiming that her disability began on September 29, 2010, due to neurofibromatosis.[2] R. 198–200, 203, 218. Rucker's date last insured was December 31, 2015. R. 29. Thus, she must show that her disability began on or before December 31, 2015 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Rucker's application at the initial and reconsideration levels of administrative review. R. 73–81, 83–91. On November 15, 2013, ALJ Jeffrey J. Schueler held a hearing to consider Rucker's disability claim. R. 41–68. Counsel represented Rucker at the hearing, which included testimony from vocational expert Mark Halman. Id.

On December 23, 2013, the ALJ entered his decision analyzing Rucker's claim under the familiar five-step process[3] and denying her claim for benefits.[4] R. 29–37. The ALJ found that Rucker was insured at the time of the alleged disability onset and that she suffered from the severe impairment of neurofibromatosis and the non-severe impairments of vertigo and obesity. R. 31–32. The ALJ determined that Rucker's neurofibromatosis did not meet or medically equal

---

[2] Neurofibromatosis is a disease that causes tumors to grow in the nervous system. See http://www.ninds nih.gov/disorders/neurofibromatosis/detail_neurofibromatosis htm#3162_1

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Rucker was born on February 27, 1967, and thus was 46 years old on the date of the ALJ's decision, a younger individual under the regulations. See 20 C.F.R. § 404.1563(c) (indicating that age will not seriously affect the ability of a person under age 50 to adjust to other work).

3

a listed impairment, specifically Listing 8.04 (chronic infections of the skin or mucous membranes). The ALJ concluded that Rucker retained the RFC to perform a limited range of sedentary work.[5] R. 32. The ALJ found that Rucker was capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally, sitting for 6 hours in an 8 hour day, and standing and walking for 2 hours in an 8 hour day. Id. Rucker could frequently balance, but could only occasionally operate foot controls, climb, stoop, kneel, or crawl, and must avoid concentrated exposure to hazards such as moving machinery and heights. Id.

The ALJ determined that Rucker would be unable to return to her past relevant work as a window production line worker and dishwasher, but that she could perform jobs that exist in significant numbers in the national economy, such as sorter, call-out operator, and telephone solicitor. R. 37. Thus, the ALJ determined that Rucker was not disabled. Id. Rucker appealed the ALJ's decision and on January 30, 2015, the Appeals Council denied Rucker's request for review. R. 1–5. This appeal followed.

## ANALYSIS

### A. Medical History

At the November 2013 hearing before the ALJ, Rucker testified that the neurofibromas on her body felt like "pins and needles" and itch. R. 50. She stated that she has to have them removed "when they get really sore and bleed." R. 50–51. The medical record contains two occasions where Rucker had neurofibromas surgically removed.[6] On June 15, 2011, Rucker presented to her treating physician Gregory Alouf, M.D. for the removal of two small

---

[5] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

[6] Rucker had, had other neurofibromas removed in the past, but those records were not part of the administrative record. R. 332.

4

neurofibromas on her right palm. R. 332. Dr. Alouf noted that she had, had these two neurofibromas removed "in the past with great success, helping with discomfort and pain." Id. In April 2013, Rucker returned to Dr. Alouf for the removal of two "quite painful" neurofibromas on her back. R. 326.

On January 14, 2012 Samuel Kolleh, D.O. performed a physical disability evaluation. R. 265–67. Dr. Kolleh indicated that Rucker was "born with neurofibroma which is likely type 1" and noted that Rucker complained of "progressive continuance of lesions over her entire body, particularly her feet," and bone spurs in her heel, making walking difficult. R. 265. On physical examination, Dr. Kolleh noted that Rucker had neurofibroma lesions "throughout her body" and a moderate amount of neurofibroma lesions on the bottom of her foot. R. 267. He further found she could walk normally, but could not walk on her heels due to intense pain. R. 266. Dr. Kolleh's functional assessment was as follows: Rucker could sit for 8 hours, and stand for 30 minutes to 1 hour in an 8-hour workday, "secondary to the bone spurs and neurofibroma lesions on her feet." R. 267. Dr. Kolleh found no limitations regarding Rucker's hands. Id.

In February 2012, Rucker presented to Richard G. Miller, D.O., complaining of left foot pain, and was diagnosed with plantar fascial fibromatosis. R. 271. Rucker had "normal gait and station" and her left foot had normal motor and sensory exam. R. 270. She was instructed to use heat and Tylenol for pain control and shown exercises for flexibility and strengthening. R. 271.

On April 9, 2013, Dr. Alouf completed a RFC questionnaire. R. 335–36. He indicated a treatment relationship of 12 years, with Rucker visiting once a year for surgical excisions. R. 335. Dr. Alouf stated that Rucker's neurofibromatosis was "chronic and debilitating" and involved "chronic migrating pain along multiple nerves and in each neurofibroma." Id. Dr. Alouf stated that Rucker's symptoms would often interfere with the attention and concentration

5

required to perform simple work-related tasks. Dr. Alouf's functional assessment was as follows: Rucker could sit for sit for 4 hours and stand or walk for 3 hours in an 8-hour day, will need a job permitting shifting positions at will from sitting, standing or walking, and will need weekly unscheduled breaks of 20–30 minutes. Id. Dr. Alouf further indicated that Rucker had limitations involving reaching, handling and fingering and could only grasp, turn, twist, or reach for objects 15% of the time and perform fine finger manipulations 5% of the time. R. 336. Dr. Alouf opined that Rucker would be absent from work 3–4 times a month and that she was not physically capable of full-time employment on a sustained basis. Id.

On February 7, 2012, Richard Surrusco, M.D., a state agency physician, completed an RFC assessment. R. 77. He stated that Rucker could lift 10 pounds frequently and 20 pounds occasionally, sit for 6 hours and stand or walk for 4 hours in an 8-hour workday, and that Rucker's ability to operate foot controls was limited.[7] Dr. Surrusco found that Rucker had no manipulative limitations. On reconsideration in June 2012, state agency physician Joseph Duckwall, M.D. found the same limitations as Dr. Surrusco. R. 87–88.

### B. Medical Opinion Evidence and RFC

Rucker argues that the ALJ improperly discounted the medical opinions of Dr. Alouf and Dr. Kolleh regarding her limitations. Rucker specifically asserts that Dr. Alouf's opinion that she cannot stand/walk for more than 3 hours, has limited use of her hands and arms, and will likely be absent from work 3 to 4 times a month should be incorporated into the RFC finding. Pls. Mem. Summ. J. at 10, Dkt. No. 15.[8] As stated above, Dr. Alouf, Rucker's treating physician,

---

[7] Dr. Surrusco further found that Rucker could frequently balance, but only occasionally climb, stoop, kneel, crouch, or crawl, and must avoid concentrated exposure to hazards such as machinery or heights. R. 77–78.

[8] The vocational expert testified that limiting Rucker's RFC to standing/walking for 2 hours in an 8-hour day would not change the occupations available to her and in his opinion the ALJ limited Rucker to 2 hours of standing/walking . R. 63.

6

completed an RFC questionnaire in April 2013 and Dr. Kolleh performed a physical consultative examination in January 2012. The ALJ gave little weight to both doctors' conclusions regarding Rucker's RFC.

> Regarding Dr. Alouf, the ALJ wrote:
>
> [Rucker's] treating surgeon completed a[n] [RFC] assessment of the claimant, in which he reported that the claimant's symptoms are 'often' severe enough to interfere with the attention and concentration required to perform simple work-related tasks. The doctor further noted that claimant requires the ability to recline or lie down during a hypothetical 8-hour workday in excess of typical 15-minute breaks and lunch. However, he later indicated that the claimant would only require unscheduled breaks on a weekly basis for 20 to 30 minutes. Dr. Alouf asserted that the claimant is capable of lifting up to 10 pounds frequently and 50 pounds occasionally, sitting for 4 hours of an 8-hour workday, and standing/walking for 3 hours out of an 8-hour workday. With regard to manipulative functions, the doctor opined that the claimant could use her bilateral hands and arms for 15% of the workday for activities including grasping, turning, twisting, and reaching, and her fingers for 5% of the workday for fine manipulation. In addition, Dr. Alouf claimed that the claimant would be absent from work 3 or 4 times per month. Finally, the doctor stated that the claimant is not physically capable of working an 8-hour day, 5 days a week on a sustained basis.

R. 35. Regarding Dr. Kolleh's 2012 physical consultative examination, the ALJ wrote:

> [Dr.] Kolleh reported that [Rucker] is capable of lifting up to 25 pounds continuously, sitting for 8 hours out of an 8-hour workday and standing for at least 30 minutes to 1 hour out of an 8-hour workday secondary to bone spurs and neurofibroma lesions on her feet causing problems. The doctor noted that there are no other limitations.

R. 35.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, No. 2:09-cv-1008, 2011 U.S. Dist. LEXIS 32627, at * 3,

7

2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09-cv-622, 2010 U.S. Dist. LEXIS 142966, at * 30, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) citing Burch v. Apfel, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam).

Here, the ALJ assigned the RFC questionnaire completed by Rucker's treating physician Dr. Alouf little weight because (1) "it is not supported by Dr. Alouf's own treatment records," (2) "is inconsistent with the record as a whole, including the claimant's treatment history and extensive daily activities," and (3) Dr. Alouf only sees Rucker once a year for surgical excision of her neurofibromas, which "does not provide the doctor with sufficient evidence to assign such strict restrictions on [her] daily abilities." R. 35.

The ALJ also assigned the consultative examination with Dr. Kolleh little weight, "as the evidence as a whole supports less severe standing restrictions and more severe lifting and carrying and postural restrictions." R. 35. The ALJ also emphasized that, though Rucker complained of worsening pain during the consultative exam, she "reported taking only Tylenol" for pain relief. R. 34. Further, while she clearly exhibited neurofibromatosis, and could not walk on her heels due to pain caused by bone spurs and neurofibroma lesions, she "was able to climb

8

up and down the examination table without any difficulty, carry on a normal tandem gait and walk on her toes, hop, bend, and squat." R. 34.

The ALJ's explanation of the degree of weight he gave to Drs. Alouf and Kolleh's medical opinions lacks the required "narrative discussion describing how the evidence supports each conclusion . . . ." See Mascio, 780 F.3d at 636. In Monroe, the Court of Appeals deemed insufficient the ALJ's explanation that he gave a doctor's opinion "'limited weight' based on [his] determination that the 'objective evidence or the claimant's treatment history did not support the consultative examiner's findings.'" Monroe, 2016 WL 3349355, at *11. The Court of Appeals emphasized that the ALJ failed to "specify what 'objective evidence' or what aspects of [the claimant's] 'treatment history' he was referring to" and thus, [the ALJ's] analysis was "incomplete" and "preclude[d] meaningful review." Id. Here, the ALJ also failed to specify the treatment records that supported his conclusions. See Id. ("Without more specific explanation of the ALJ's reasons for the differing weights he assigned various medical opinions, neither we nor the district court can undertake meaningful substantial-evidence review.").

In particular, the ALJ should have explained how he determined that Rucker did not have any manipulative limitations. As the ALJ mentioned, Dr. Alouf opined that Rucker could use her hands and arms for 15% of the workday, and her fingers for 5% of the workday for fine manipulation. R. 35. Rucker testified at the hearing before the ALJ in November 2013 that she had a painful neurofibroma removed from her hand in 2013. R. 54. She stated that it prevented her from gripping anything in her hand, and that she experienced loss of strength, "until after [she] had it taken out." R. 54–55. Of course, whether Rucker has manipulative limitations is particularly important in light of the ALJ's conclusion that Rucker is limited to sedentary work. Since "[m]ost unskilled sedentary jobs require good use of both hands and the fingers," a proper

9

evaluation of Rucker's ability to use her hands is critical to an accurate assessment at step five of the sequential evaluation. <u>Titles II & Xvi: Determining Capability to Do Other Work- Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work</u>, SSR 96-9P (S.S.A. July 2, 1996). SSR 96-9P explains that "[a]ny significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." <u>Id.</u> Indeed, Rucker argues in her brief that she cannot perform any of the sedentary work identified by the vocational expert due to purported limitations with grasping, turning, reaching, and fine finger manipulation.[9] Pls. Mem. Summ. J. at 16, Dkt. No. 15.

In formulating Rucker's RFC, the ALJ did not include any manipulative limitations, instead concluding, without explanation, that Dr. Alouf's opinion regarding manipulative limitations was not supported by "Dr. Alouf's own treatment records and is inconsistent with the record as a whole. . . ." R. 35. The ALJ failed to specify which treatment records did not support Dr. Alouf's opinion, or how his opinion was inconsistent with the record as a whole.[10] Under <u>Monroe</u>, an ALJ's failure to "build an accurate and logical bridge from the evidence to his conclusion" is grounds for remand.[11] <u>Monroe</u>, 2016 WL 3349355, at *10. Being able to get onto

---

[9] Indeed, the jobs that the ALJ determined Rucker could perform all require some handling and fingering. <u>See</u> DOT 209.687-022 (Sorter)(frequent handling and fingering required); DOT 237.367-014 (call-out operator) (occasional handling and fingering required); DOT 299.357-014 (telephone solicitor) (frequent fingering and occasional handling required).

[10] The same analysis applies to Dr. Alouf's opinion that Rucker would be absent from work 3–4 times per month.

[11] Indeed, whether the record actually contains grounds to contradict the manipulative limitations found by Dr. Alouf, or claimed by Rucker during her hearing testimony, is apparently immaterial at this stage, because the ALJ failed to articulate such reasons. <u>See</u> <u>Monroe</u>, 2016 WL 3349355, at *10 (emphasis added) (quoting <u>Radford v. Colvin</u>, 734 F.3d 288, 295 (4th Cir. 2013)) (finding that "[a] necessary *predicate* to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."); <u>See</u> <u>also</u> <u>King v. Califano</u>, 615 F.2d 1018, 1020 (4th Cir.1980)) (emphasis added) (explaining that "[i]t is well-settled that an ALJ may not reject medical evidence for no reason or for the wrong reason. Although he may, under the regulations,

10

and off of an examination table and seemingly walk normally will not substitute for the more robust and specific explanation required to explain the weight assigned to a physician's opinion. I find that the ALJ's lack of analysis in this case frustrates meaningful review and therefore requires remand for further fact finding. Upon remand, the ALJ should adequately explain the evidence that supports his RFC determination, including his finding regarding manipulative limitations. Because I find that remand is warranted based on the ALJ's failure to explain the weight given to medical opinion evidence in formulating Rucker's RFC, Rucker's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Rucker's remaining allegations of error.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Rucker's Motion for Summary Judgment be **GRANTED IN PART** and the Commissioner's Motion for Summary Judgment be **DENIED** and this case be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Opinion.

The Clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file

---

assign no or little weight to a medical opinion . . . he must *explain* his rationale, and it must be supported by the record."). In short, if the ALJ does not support his conclusions with specific, accurate, reasons from the record, the court cannot independently delve into the record and construct his "logical bridge" for him.

11

specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: August 3, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge