CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 20 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANN M. RUCKER, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:15-cv-00148 |
| v. | ) |
| CAROLYN W. COLVIN, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The Magistrate Judge filed a report and recommendation on August 4, 2016, recommending that Plaintiff Ann M. Rucker's motion for summary judgment be granted in part, the Commissioner's motion for summary judgment denied, and the Commissioner's final decision remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion. The government filed objections to the Magistrate Judge's report, ECF No. 25, and this matter is now ripe for the court's consideration. For the reasons that follow, the court overrules the objections of the Commissioner and adopts the magistrate judge's report and recommendation in full.

I.

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial

1

evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Regardless of evidence contained in the record, the Administrative Law Judge ("ALJ") must sufficiently articulate his findings such that the district court can undertake a meaningful review. Monroe v. Colvin, 826 F.3d 176, 189(4th Cir. 2016)(quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013))("a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence); Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)(quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013))("remand may be appropriate… where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's review frustrate meaningful review"). Thus, district courts must remand cases where

2

the ALJ's opinion lacks specific analysis and fails to create a logical nexus between evidence and the conclusion.

Further, when the court refers a plaintiff's social security disability appeal to the magistrate judge for report and recommendation, the parties are bound by the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Rule 72(b) permits a party to "serve and file specific written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

3

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-CV-00088, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08-CV-69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*.'") Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008). As the court noted in Veney:

4

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

The Commissioner objects to the magistrate judge's application of Mascio and Monroe to the present case. ECF No. 25. Specifically, the Commissioner argues that the ALJ sufficiently discussed Rucker's medical records to permit meaningful judicial review of the ALJ's findings regarding Rucker's residual functioning capacity ("RFC"). Id. In so arguing, the Commissioner relies on a number of cases from this district decided prior to Monroe and Mascio. Id. However, just as in Mascio, "[b]ecause we are left to guess about how the ALJ arrived at his conclusions on [Rucker's] ability to perform relevant functions," remand is appropriate in this case. 780 F.3d at 637. The court has reviewed the Commissioner's objections de novo and concludes that the ALJ failed to adequately explain his reasoning for giving limited weight to the opinions of multiple physicians who testified in support of Rucker. Therefore, the court overrules the Commissioner's objections and concurs with the magistrate judge that this matter must be remanded to the Commissioner for further analysis consistent with this opinion.

5

## A.

Because the Commissioner's objection rests largely on the application of <u>Monroe</u> and <u>Mascio</u> to the present facts, the court will first review the Fourth Circuit Court of Appeals' decisions in those cases. <u>Monroe</u> reversed a district court's grant of summary judgment for the Commissioner because the ALJ's opinion lacked adequate explanation as to why he gave a doctor's opinion limited weight in calculating the claimant's RFC. 826 F.3d at 191. The Court of Appeals emphasized Social Security Ruling 96-8p's command that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." <u>Id.</u> at 189. In <u>Monroe</u>, the ALJ failed to indicate how the facts included in the decision supported the conclusion that the claimant "did not lose consciousness two or three times daily or suffer extreme fatigue." <u>Id.</u> at 190. The ALJ failed to address multiple doctors' opinions linking the claimant's blackouts to narcolepsy. <u>Id.</u> at 190-91. The ALJ provided no explanation as to why he relied on particular evidence over contradictory evidence or even what evidence was used to support his ultimate RFC conclusion. <u>Id.</u> at 188-89. The Court of Appeals also held that the ALJ erred in failing to explain why particular medical opinions were given limited weight. <u>Id.</u> at 190-91. The conclusory analysis of medical opinions prohibited the court from understanding why particular medical opinions were favored over others and frustrated the reviewing court's need to determine what evidence was actually applied to the ALJ's conclusion. <u>Id.</u>

In <u>Mascio</u>, the Fourth Circuit similarly reversed a district court's grant of summary judgment for the Commissioner where the ALJ failed to undertake a full and proper analysis

6

before making a conclusion as to the complainant's RFC. 780 F.3d at 640-41. The court explained that the record contained conflicting evidence as to the claimant's RFC that the ALJ did not address. Id. at 637. The lack of explanation left the court "to guess about how the ALJ arrived at his conclusions on Mascio's ability to perform relevant functions." Id. The court also took issue with the ALJ's lack of explanation in weighing the credibility of the claimant. Id. at 639-40.

Collectively, Mascio and Monroe teach that before determining whether the record contains substantial evidence supporting the ALJ's decision, the district court must first identify what evidence the ALJ used to reach the ultimate conclusion. Where the ALJ relies on particular evidence in light of contradictory evidence, the court must review why the ALJ weighed the evidence in such a fashion. See, e.g., Monroe, 826 F.3d at 188-89; Mascio, 780 F.3d at 637. Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case so that the ALJ can adequately explain if and how the evidence supports his RFC determination. Mascio, 780 F.3d at 637.

## III.

The lack of specificity and explanation at issue in Mascio and Monroe plagues the ALJ decision presently before the court. The Commissioner seeks to distinguish Mascio and Monroe and cites pre-Monroe case law to argue that taken as a whole, the ALJ's decision sufficiently lays out his reasoning such that the court can undertake a meaningful review. However, the ALJ failed to sufficiently articulate his reasons for giving little weight to the

7

medical conclusions of Drs. Kolleh and Alouf, Rucker's consultative and treating physicians respectively.

As the magistrate judge noted, where an ALJ determines that a treating physician's medical opinion is not entitled to controlling weight, the ALJ must employ the following factors to determine what weight to give the opinion: (1) the length of treatment and frequency of examination; (2) that nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinions." Ricks v. Comm'r, No. 2:09-cv-622, 2010 WL 6621693, *10 (E.D. Va. Dec. 29, 2010)(citing Burch v. Apfel, Fed. App'x 25, 259 (4th Cir. 2001)).

The ALJ addressed Dr. Alouf's conclusion as follows:

> In April 2013, Gregory Alouf, M.D., the claimant's treating surgeon, completed a residual functional capacity assessment of the claimant, in which he reported that the claimant's symptoms are 'often' severe enough to interfere with the attention and concentration required to perform simple work-related tasks. The doctor further noted that the claimant requires the ability to recline or lie down during a hypothetical 8-hour workday in excess of typical 15-minutes breaks and lunch. However, he later indicated that the claimant would only require unscheduled breaks on a weekly basis for 20 to 30 minutes. Dr. Alouf asserted that the claimant is capable of lifting up to 10 pounds frequently and 50 pounds occasionally, sitting for 4 hours out of an 8-hour workday, and standing/walking for 3 hours out of an 8-hour workday. With regard to manipulative functions, the doctor opined that the claimant could use her bilateral hands and arms for 15% of the workday for activities including grasping turning, twisting, and reaching, and her fingers for 5% of the workday for fine manipulation. In addition, Dr. Alouf claimed that the claimant would be absent from work 3 or 4 times per month. Finally, the doctor stated that the claimant is

8

> not physically capable of working an 8-hour day, 5 days a week on a sustained basis. This opinion is assigned little weight, as it is not supported by Dr. Alouf's own treatment records and is inconsistent with the record as a whole, including the claimant's treatment history and extensive daily activities. Further Dr. Alouf indicated that he only sees the claimant approximately once a year for surgical excisions for neurofibromas, which does not provide the doctor with sufficient evidence to assign such strict restrictions on the claimant's daily abilities.

R. at 35. As to Dr. Kolleh's report, the ALJ wrote:

> Samuel Kolleh, D.O. reported that the claimant is capable of lifting up to 25 pounds continuously, sitting for 8 hours out of an 8-hour workday, and standing for at least 30 minutes to 1 hour out of an 8 hour workday secondary to bone spurs and neurofibroma lesions on her feet causing problems . The doctor noted that there are no other limitations (Exhibit1F). This opinion is assigned little weight, as the evidence as a whole supports less severe standing restrictions and more severe lifting and carrying and postural restrictions.

R. at 35.

The ALJ's comments regarding the weight given to the doctors' opinions provide no guidance as to what evidence supported a finding that the opinions deserved less than controlling weight. The ALJ failed to articulate or describe any facts within the record that indicate flaws with Dr. Alouf's medical opinion. Compare with Monroe, 826 F.3d at 190-91. Though the ALJ indicates Dr. Alouf's opinion is inconsistent with his own treatment records, there is no guidance or citation indicating what portion of the treatment records conflict with Dr. Alouf's opinion. This lack of detail as to treatment records at odds with Dr. Alouf's medical opinion prevents the court from determining if the ALJ actually considered substantial evidence in making a credibility determination as to the opinion. The ALJ further opined that Dr. Alouf's conclusions were inconsistent with the record as a whole. Once again, this commentary provides no roadmap as to the analysis undertaken by

9

the ALJ or what evidence within the record, if any, supports the ALJ's ultimate conclusion. Though the ALJ mentioned that Rucker only visited Dr. Alouf once a year, the decision lacked any analysis as to why such a frequency rendered the ALJ's opinion less than fully credible. R. at 35. Boilerplate recitation of the factors listed in 20 CFR. § 416.927(c)(2) does not rise to the level of analysis ALJ's must undertake in assessing treating physician's opinions. See Mascio, 780 F.3d at 639. Even if it did, the ALJ's decision would still be deficient as the ALJ makes no mention of Dr. Alouf's specialization or of the nature and extent of his relationship with Rucker.

As to Dr. Kolleh, the ALJ merely stated that the "evidence as a whole" was at odds with the medical opinions. R. at 35. The ALJ cites no objective evidence, such as treatment records or testimony, that contradicts Dr. Kolleh's opinion. Simply stating the "evidence as a whole" contradicts the medical opinion leaves the court only to guess what evidence the ALJ relied on in finding Dr. Kolleh overstated Rucker's standing restrictions. Forcing the court to engage in such guesswork renders the ALJ's explanation of the weight given Dr. Kolleh's opinion deficient. Mascio, 780 at 637. Therefore, the ALJ erred in weighing the conclusions of Dr. Kolleh.

Because the ALJ's decision consists largely of conclusory assessments of Drs. Alouf and Kolleh's opinions, it does not contain enough information to allow the district court to determine whether it is supported by substantial evidence. Though the record may contain evidence that shows the medical opinions of Drs. Kolleh and Alouf ought not be fully credited, such evidence is plainly lacking from the ALJ's decision. Where the ALJ's decision fails to allow for a meaningful review, the district court may not scour the record in search of

substantial evidence. Instead, the district court must remand the case to the ALJ so that the ALJ can undertake a proper analysis. Monroe, 825 F. 3d 190-91.[1]

### IV.

The court has reviewed the Magistrate Judge's report, the objections to the report, and the administrative record and, in so doing, made a de novo determination of those portions of the report to which Rucker properly objected. The court finds that the magistrate judge was correct in concluding that the ALJ's opinion lacked analysis necessary for the district court to undertake meaningful review. As such, the Commissioner's objections to report and recommendation, ECF No. 25, are overruled. The Magistrate Judge's report and recommendation, ECF No. 24, is **ADOPTED** in its entirety, Rucker's motion for summary judgment, ECF No. 14, is **GRANTED in part**, and the Commissioner's motion for summary judgment, ECF No. 16 is **DENIED**. This case is **REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

An appropriate Order will be entered to that effect.

Entered: 09/20/2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[1] The government cites a no less than seven cases decided in this district and several other persuasive cases decided prior to Mascio or Monroe. While the court appreciates the government's extensive research, it is obliged to follow Mascio and Monroe.

11